**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Leonard, et al., | No. CV-23-08626-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Safeco Insurance Company of America, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion to remand. (Doc. 8.) For the following reasons, the motion is denied.

## BACKGROUND

On November 2, 2023, Plaintiffs filed a complaint in Yavapai County Superior Court. (Doc. 1-1 at 8-13.) The only non-Doe defendant is Safeco Insurance Company of America ("Defendant"). (*Id.*)

In broad strokes, the complaint alleges as follows. Plaintiffs own a recreational vehicle ("RV") that is covered by an "uninsured, underinsured, liability, comprehensive and collision" policy issued by Defendant. (*Id.* ¶¶ 2, 8.) The RV was involved in a collision in November 2022 that caused "significant damage to the RV." (*Id.* ¶¶ 9-10.) The repair facility initially estimated that repairs would cost $40,052.60 and later increased the estimate to $42,354.80. (*Id.* ¶¶ 13, 15.) Defendant refused to pay those amounts and instead sent three checks totaling $15,741.16. (*Id.* ¶¶ 14, 18, 22.) Plaintiffs have "not accepted these partial payment checks nor presented these checks for payment to any

1 financial institution." (*Id.* ¶ 22.) Plaintiffs assert they have sustained $7,200 in "loss of use" damages in addition to damages arising from the unpaid repairs. (*Id.* ¶¶ 2, 8-10, 14-16, 26.) Based on these allegations, the complaint asserts two claims against Defendant: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 28-37.) In the prayer for relief, Plaintiffs seek "consequential damages, incidental damages, special damages, and all money damages, including damages for loss of use, in an amount to be determined at [t]rial, but in no event less than $49,554.80, based upon Defendant's breach of contract, and breach of the covenant of good faith and fair dealing." (*Id.* at 12.) In the alternative, Plaintiffs seek "a declaration the RV is a total loss with appropriate compensatory payment . . . [of] approximately $70,000." (*Id.*) Plaintiffs also seek attorneys' fees pursuant to A.R.S. § 12-341.01, costs, and "such other relief as the Court deems just in the circumstances." (*Id.*)

On November 20, 2023, defense counsel sent an email to Plaintiffs' counsel to inquire (1) whether Plaintiffs view the case as falling within "tier two or tier three"; and (2) "if you are claiming more than $75,000 in total damages." (Doc. 12-2 at 2-3.)

On November 21, 2023, Plaintiffs' counsel responded: "I do believe we are in Tier Two regarding both the amount in controversy and the complexity of the case pursuant to Ariz. R. Civ. P. 26.2. I cannot stipulate to the claim being no more than $75,000, noting that if we have to go to trial, attorney fees would obviously be higher than if not, and could be significant. In the claim, I was merely indicating that the property loss could not be less than $50,000, but an award would be determined at trial, if we are required to go to trial." (*Id.* at 2.)

On December 12, 2023, Defendant removed the action to federal court, based solely on diversity jurisdiction. (Doc. 1.) As for the amount in controversy, the removal notice provides: "Plaintiffs assert claims for breach of contract and insurance bad faith and seeks, among other things, an award of attorneys' fees. Plaintiffs' documentation provides information that they seek damages exceeding $75,000." (*Id.* ¶ 7.)

On January 8, 2024, Plaintiffs' counsel sent a settlement demand. (Doc. 12-3.) The

letter offered to settle this case for $74,999. (*Id.* at 2.) The letter further stated that the most recent repair estimate was $43,354.80; that Plaintiffs had also "incurred additional damage due to the vehicle being exposed to the elements and rodents, which have damaged the vehicle further" and increased the overall property-damage total to "nearly $55,000"; and that "[i]n addition to the property damage costs incurred . . . [Plaintiffs] have also incurred thousands of dollars in costs such as: loss of use of their vehicle for over a year, costs to continually make the loan payments for a vehicle they cannot use, costs to maintain insurance on a vehicle they cannot use, costs of moving the vehicle back and forth from the [repair facility] as [Defendant] refused to pay for storage, costs in attorneys' fees in attempts to resolve this matter short of litigation, and they have lost the opportunity to visit friends, grandchildren, and other family members." (*Id.*) The letter concluded: "Should your client not accept this offer by the expiration date and time, our firm will file a motion to remand this case back to Yavapai County Superior Court and amend the complaint to add a claim for bad faith." (*Id.* at 3.)

On January 11, 2024, after the settlement deadline expired, Plaintiffs filed the pending motion to remand. (Doc. 8.)

On January 29, 2024, Defendant filed a response. (Doc. 12.)

Plaintiffs did not file a reply, and the time to do so has now expired.

**ANALYSIS**

I.  Legal Standard

"A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citing 28 U.S.C. § 1441(a)). A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse. 28 U.S.C. § 1332(a). The amount in controversy is the "amount at stake in the underlying litigation," which comprises "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "*inter alia*, damages (compensatory,

punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49 (internal quotation marks and citations omitted).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* (quotation omitted). If "damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory threshold] when federal jurisdiction is challenged." *Id.*[1] "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

There is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).[2] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). *See also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where doubt regarding the right to removal exists, a case should be remanded

---

[1] In contrast, a removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

[2] The "strong presumption" against removal in "mine-run diversity cases" was not altered by *Dart*, which addressed removal of class actions under the Class Action Fairness Act. *Dart*, 574 U.S. at 89. *See generally Johnson v. Twin City Fire Ins. Co.*, 2015 WL 1442644, *2 n.2 (D. Ariz. 2015).

to state court.").

II.     The Complaint

As noted, the complaint alleges that Plaintiffs seek "consequential damages, incidental damages, special damages, and all money damages, including damages for loss of use, in an amount to be determined at trial, but in no event less than $49,554.80, based upon Defendant's breach of contract, and breach of the covenant of good faith and fair dealing." (Doc. 1-1 at 12.) In the alternative, Plaintiffs seek "a declaration the RV is a total loss with appropriate compensatory payment . . . [of] approximately $70,000." (*Id.*) Plaintiffs also seek unspecified attorneys' fees pursuant to A.R.S. 12-341.01, costs, and "such other relief as the Court deems just in the circumstances." (*Id.*)

Because "it is not facially evident from the complaint that more than $75,000 is in controversy," and the parties dispute whether it is, Defendant "must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson*, 319 F.3d at 1090.

III.    Defendant's Arguments And Evidence

Defendant identifies five reasons why the amount in controversy should be deemed to exceed $75,000:

> First, Plaintiffs' strategic settlement demand for one dollar less than the threshold amount all but confirms the amount in controversy exceeds $75,000. Second, Plaintiffs have represented they seek at least $50,000 of damages (exclusive of attorney fees and costs) by pleading their suit as a "Tier 2" case in her Complaint. Third, Plaintiffs refused to stipulate to capping their damages and attorney's fees at $75,000. Fourth, . . . the amount in controversy includes the potential punitive damages that Plaintiffs seek, and Arizona cases indicate that plaintiffs in insurance bad faith cases often seek (and are awarded) punitive damages that exceed a 1:1 ratio with compensatory damages. Fifth, . . . the amount in controversy may also include a potential award of attorney's fees, and Arizona cases indicate that parties in insurance bad faith cases often incur (and seek) "significant" attorney fees.

(Doc. 12 at 1-2.)

The Court will address each argument in turn.

…

…

- 5 -

A.      **$74,999 Settlement Offer**

Defendant's first argument is that Plaintiffs' recent settlement offer of $74,999 establishes that the amount in controversy exceeds $75,000. At first blush, the settlement offer can be viewed as supporting Defendant's position. As one court explained:

> [I]t is not the settlement value of a case that determines whether the jurisdictional amount is in controversy. By definition, offers to settle a claim by plaintiffs involve their willingness to take less than the amount which they would expect to obtain by a jury verdict in order to secure immediate payment and avoid the inconvenience of litigation. If a plaintiff is willing to settle a case for $74,999.00, it follows that said plaintiff would seek considerably more than $74,999.00 at trial. . . . If the settlement offers are probative at all (and particularly the opening settlement offer of $74,999.00), they support Defendant's assertion that the actual amount in controversy is more than $75,000.

*Weber v. Hamman*, 2009 WL 10671566, *2 (W.D. Mo. 2009) (cleaned up). *See also See Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) ("If plaintiffs are willing to settle the case for the sum of $70,000, then it follows *a fortiori* that plaintiffs would expect to receive considerably more than $70,000 at trial.").[3]

However, a complicating factor here is that because the settlement offer was made after removal, it may have factored in the value of Plaintiffs' threatened-but-not-yet-asserted tort claim for insurance bad faith. Because, as discussed in more detail below, that claim does not count toward the jurisdictional threshold, any settlement offer that incorporates its expected value must be discounted accordingly. Given this backdrop, the $74,999 settlement offer is modestly helpful to Defendant's position but not dispositive.

…

…

---

[3]      Admittedly, not all courts agree that a settlement offer of just below $75,000 suggests that the amount in controversy exceeds $75,000. *See, e.g.*, *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 n.2 (N.D. Cal. 1998) ("[P]laintiff's offer to settle the action for $74,000 equally suggests that plaintiff values its claim as below the jurisdictional minimum."); *Vasquez v. CSX Transp., Inc.*, 2009 WL 1953052, *3 (N.D. Ill. 2009) ("[P]laintiffs usually settle for less than what they believe they could get if they prevailed at trial. However, plaintiffs do not necessarily shoot so low with their initial offers. In fact, . . . a plaintiff [may make] an initial offer that far exceed[s] his bottom line . . . [or] attempt[] to anchor the negotiations in his favor by starting the process with a high number.") (citations omitted).

- 6 -

### B. "Tier 2" Designation

As for Defendant's second argument, Rule 26.2 of the Arizona Rules of Civil Procedure is entitled "Tiered Limits to Discovery Based on Attributes of Cases." In general, "[t]his rule explains how much discovery a party may take in their case. The amount of discovery a party may take is limited by the tier to which their case is assigned. . . . [C]ases are assigned to one of three tiers, each of which has different limits." *See* Ariz. R. Civ. P. 26(a). "Actions claiming $50,000 or less in damages" fall within Tier 1, "[a]ctions claiming more than $50,000 and less than $300,000 in damages" fall within Tier 2, and "[a]ctions claiming $300,000 or more in damages" fall within Tier 3. *See* Ariz. R. Civ. P. 26(c).

Had Plaintiffs characterized this case as falling within Tier 3, that characterization would be evidence that the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction. *Haire v. Liberty Mutual Ins. Co.*, 2020 WL 5088071, *6 (D. Ariz. 2020) ("Plaintiff's decision to check the Tier 3 box is, therefore, at least some evidence that Plaintiff valued his damages at $300,000 or more."). But Plaintiffs' characterization of this case as falling within Tier 2 does not raise the same inference. Because the low end of Tier 2 is $50,000, which falls below the $75,000 threshold in § 1332, a Tier 2 designation does not alone serve as evidence of removability.

### C. Refusal To Stipulate To Recovery Cap Of $75,000

The Court reaches the same conclusion regarding Defendant's third argument, which concerns Plaintiffs' pre-removal refusal to stipulate to a recovery cap of $75,000. Courts have repeatedly concluded that a "plaintiff's refusal to stipulate that her damages are below the jurisdictional amount is not dispositive." *Washington v. Am Home Assurance Co.*, 2005 WL 8174027, *2 (W.D. La. 2005). *See also Feliciano v. Target Corp.*, 2019 WL 2210739, *2 (E.D.N.Y. 2019) ("Defendant's allegation that Plaintiff refused to cap damages at $75,000 is not determinative of the amount in controversy and is insufficient to establish the jurisdictional amount required by 28 U.S.C. § 1332(a)."); *Kum v. Walcott*, 2012 WL 4772072, *1 (E.D.N.Y. 2012) (citing a treatise for the proposition that a "refusal

to stipulate . . . should not be accepted by the district court as establishing the jurisdictional amount"). After all, a refusal to stipulate may simply reflect the plaintiff's belief that there is at least a small chance of recovering more than $75,000. Because a removing defendant must prove it is "more likely than not" that the amount in controversy exceeds the $75,000 threshold, *Sanchez*, 102 F.3d at 404, a plaintiff's refusal to stipulate to a recovery cap of $75,000 sheds little light on whether that standard has been satisfied—it may indicate nothing more than the plaintiff's unwillingness to foreclose whatever chance (however slim) of an unexpectedly high recovery. Plaintiffs' refusal to stipulate is not, to be clear, irrelevant—it is simply insufficient, on its own, to satisfy Defendant's burden of proof. *See, e.g.*, *Murphy Murphy & Murphy, P.C. v. Nationwide Ins. Co.*, 2019 WL 2389663, *4-5 (E.D. Pa. 2019) (noting that the "Court may, in its discretion, consider evidence of a plaintiff's refusal to stipulate the damages as one factor in determining whether Plaintiffs' claims exceed the jurisdictional threshold" but that the "majority of the opinions in the Eastern District of Pennsylvania have found that a plaintiff's refusal to stipulate to a damages award of less than $75,000 does not, by itself, satisfy defendant's burden of proof") (citation omitted). *See also id.* at *5 ("A party's failure to sign a stipulation limiting damages—though worthy of some consideration—is not dispositive of the amount-in-controversy issue, given that both defendants and plaintiffs typically seek to use it as a tactical advantage in removing case.").

### D. **Punitive Damages**

As for Defendant's fourth argument, although it is true that insurance bad faith cases may result in punitive damage awards, Defendant cannot take advantage of that principle here for the simple reason that this case is not currently (and, more important, was not at the time of removal) an insurance bad faith case involving a claim for punitive damages. The only claims asserted in the complaint are contract claims, which do not, in general, provide a basis for seeking punitive damages under Arizona law. *Richards v. Powercraft Homes, Inc.*, 678 P.2d 449, 451 (Ariz. Ct. App. 1983) ("Because appellees' consumer fraud claim is barred, leaving only their claim for breach of implied warranty, the award of

punitive damages must be vacated. Punitive damages are generally not available for breach of contract. . . . [P]unitive damages are no more available for a breach of an implied warranty as they are for any other breach of contract.").[4] Nor do Plaintiffs seek punitive damages in the complaint's prayer for relief. (Doc. 1-1 at 12.) Although the parties' recent correspondence suggests that Plaintiffs may, in the future, seek to amend their complaint to add a tort claim for insurance bad faith (which would, in turn, provide the foundation for a claim for punitive damage), the damages associated with such hypothetical future claims do not count toward § 1332's jurisdictional threshold. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018) ("When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant. So, for example, if a plaintiff files a complaint in state court and voluntarily dismisses a claim before removal, any relief that might have been awarded on the dismissed claim will not be included in the amount in controversy. Likewise, when the amount in controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction. . . . In sum, the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.").

### E.     **Potential Award Of Attorneys' Fees**

Defendant's fifth argument concerns Plaintiffs' potential entitlement to attorneys' fees under A.R.S. § 12-341.01 should they prevail on their contract claims. As Defendant correctly notes, such fees count toward the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees.").

---

[4] Although the Arizona Court of Appeals' decision in *Richards* was reversed on other grounds, the Arizona Supreme Court affirmed its ruling as to the unavailability of punitive damages. *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427, 429 (Ariz. 1984) ("While we approve the Court of Appeal's decision regarding the consumer fraud claim and the punitive damages, we vacate that portion of the Court of Appeal's decision regarding the verdicts of plaintiffs Richards, Farina, and White.").

Plaintiffs have now clarified that the damage estimate for the RV is even higher than the $42,354.80 figure listed in the complaint—Plaintiffs stated in their January 8, 2024 letter that, due to subsequent developments, the "vehicle has [now] incurred nearly $55,000 dollars in damage." (Doc. 12-3 at 2.) It is proper to consider that figure, rather than the lower figure asserted in the complaint, when evaluating the amount in controversy. *Chavez*, 888 F.3d at 417-18 ("When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant. . . . That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy. In sum, the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.") (citations omitted); *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) ("[A] plaintiff may properly include as part of the amount in controversy costs which will not be incurred until after the suit is ended."). That figure, however, must be reduced by $1,000 to account for Plaintiffs' deductible. (Doc. 1-1 at 10 ¶ 22.)[5]

In addition to the $54,000 in RV-related damages, Plaintiffs also clarified in their recent letter that they seek certain additional categories of compensatory damages, including "loss of use of their vehicle for over a year, costs to continually make the loan payments for a vehicle they cannot use, costs to maintain insurance on a vehicle they cannot use, costs of moving the vehicle back and forth from the [repair facility] as [Defendant] refused to pay for storage, costs in attorneys' fees in attempts to resolve this matter short of litigation, and [the lost] opportunity to visit friends, grandchildren, and other family members." (Doc. 12-3 at 2.) Although Plaintiffs' letter does not attempt to quantify those

---

[5] Plaintiffs' repair-related damages do not, in contrast, need to be reduced by the value of the checks that Defendant sent to Plaintiffs. This is because Plaintiffs specifically allege that they refused to "accept[] these partial payment checks" and have not "presented these checks for payment to any financial institution." (Doc. 1-1 at 10 ¶ 22.) *Cf. O'Neal v. America's Best Tire LLC*, 2016 WL 3087296, *2-3 (D. Ariz. 2016) (rejecting "the proposition that tender of payment is sufficient to establish payment, whether the checks were cashed or not") (citation omitted).

damages, Plaintiffs alleged in the complaint that their loss-of-use damages alone total $7,200.  (Doc. 1-1 at 11 ¶ 26.)  Thus, the amount in controversy here, before attorneys' fees, is at least $61,200.  Accordingly, if the probable size of the fee award exceeds $13,800, the $75,000 jurisdictional threshold will be met.

In the Court's experience, it is a virtual certainty that a prevailing plaintiff in a contested contract action will incur more than $13,800 in compensable attorneys' fees. *See, e.g., Gonzalez v. US Human Rights Network*, 2024 WL 149979, *13-22 (D. Ariz. 2024) (awarding $234,881 in attorneys' fees under A.R.S. § 12-341.01 in a contested contract action that "culminated in a jury trial in which [the plaintiff] recovered about $33,000 before costs, fees, and interest on her contract claims and defeated all of [the defendant's] contract-based counterclaims").  Defendant has cited other cases recognizing the likelihood of such an award.  *Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 674 (Ariz. Ct. App. 2012) (affirming $19,000 award of attorneys' fees arising from insurance coverage dispute).  Additionally, Plaintiffs do not appear to dispute that their attorneys' fees will likely exceed $13,800 when all is said and done—they acknowledge that their fees "could be significant" if this case goes to trial (Doc. 12-2 at 2)[6] and only seem to argue that fees incurred after removal don't count toward the jurisdictional threshold (Doc. 8 at 3).

Plaintiffs are incorrect.  In *Fritsch v. Swift Transportation Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit rejected the notion "that future attorneys' fees should not be included in the amount in controversy because they are inherently speculative and can be avoided by the defendant's decision to settle an action quickly," explaining: "We have held that attorneys' fees awarded under fee-shifting statutes or contracts are part

---

[6] Some courts have used a percentage-based method to estimate, for § 1332 purposes, the probable size of a future award of attorneys' fees.  *See, e.g., Guglielmino*, 506 F.3d at 698 (noting that the district court "measured [attorneys' fees] by a 'conservative' estimate of 12.5% of economic damages").  However, neither party advocates such an approach here.  Additionally, the Ninth Circuit has clarified that although "[w]e do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, . . . a per se rule is inappropriate." *Fritsch*, 899 F.3d at 796 n.6.  Given this backdrop, the Court declines to use a percentage-based test to estimate the likely size of the fee award.

- 11 -

of the amount in controversy and that the amount in controversy includes *all* relief to which the plaintiff is entitled if the action succeeds. We may not depart from this reasoning to hold that one category of relief—future attorneys' fees—are excluded from the amount in controversy as a matter of law." *Id.* at 795 (citations omitted). Thus, although "district courts are well equipped . . . to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement," anticipated post-removal attorneys' fees are not categorically excluded from the amount in controversy. *Id.* at 795-96. Here, the evidence suggests that a prompt settlement is unlikely—Defendant recently rejected Plaintiffs' settlement offer and Plaintiffs have threatened to amend their complaint to add a new, potentially liability-expanding claim as a consequence of that rejection.

Given all of this—where the compensatory damages associated with Plaintiffs' contract claims total no less than around $61,200 (which is a conservative estimate and doesn't include the possibility of punitive damages), Plaintiffs would more likely than not be in line to recover more than $13,800 in attorneys' fees on their contract claims, Plaintiffs refused to stipulate to $75,000 recovery cap before removal, and Plaintiffs made a post-removal settlement offer of $74,999—Defendant has met its burden of establishing, by a preponderance of the evidence, that § 1332(a)'s jurisdictional threshold is satisfied.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to remand (Doc. 8) is **denied**.

Dated this 16th day of February, 2024.

_____
Dominic W. Lanza
United States District Judge